## STATE v. McDIARMID.

QUO WARRANTO—*State not required to show demand, etc.*—In a proceeding by quo warranto, at the instance of the State, the State is not bound to show a demand for the office, nor to establish any fact, save such as are tendered by a replication, or put in issue by a rejoinder or other plea.

ISSUE IN—*Between whom.*—The issue, in quo warranto, is not between the parties who may be contending for an office, but between the State and the party holding or in possession.

CONSTITUTIONAL LAW—*Legislature may create office of Recorder, etc.*—The Constitution, of 1868, does not define or enjoin the duties to be performed by the county clerks, and it was competent for the legislature under *Sec.* 19, *Art. VII*, to define, add to or take from the duties of the county clerk, and the act, *approved, March* 16, 1871, "to provide for clerks of Circuit Courts in certain counties, and define their duties," is not unconstitutional.

### QUO WARRANTO.

*Montgomery, Attorney General, Warwick, Wilshire & Coblentz and Garland & Nash,* for Plaintiff.

We submit it was competent for the legislature to repeal the act of July 9, 1868, which made the county clerks of the several counties, *ex-officio* recorders thereof, and confer the duties of recorder upon another officer.

The office of recorder is not an office created by the Constitution. See *Sec. I, Chap.* 142, *Gould's Dig.* The Constitution of 1836 is silent as to the office of recorder—it was created by act of legislature. Under the Constitution of 1836, the office of circuit clerk was a constitutional office, and the act of February 12, 1838, created the office of recorder and conferred its duties upon the circuit clerks, while the present Constitution makes the county clerk's a constitutional office, and by the act of July 9, 1868, the duties of the office of recorder was conferred on the several county clerks. Hence, we hold that it was competent for the legislature by the act of March 16, 1871, to relieve the county clerks of the duties of recorder.

See, 1 *Scam., Ill. Rep.*, 537 ; 1 *Selden*, 285, 289, 291 ; 3 *N. Y.*, 285 ; 4 *Ind.*, 342 ; 7 *Ind.*, 327 ; 1 *Ark.*, 537-8 ; 7 *Cala.*, 223-9 ; *Ib.* 341, 502 ; 1 *Kansas*, 27 ; 5 *Kansas*, 304 ; 1 *Hill*, 81 ; 14 *Barb.*, 397 ; also, *Cooly on Const. Linn*, 87, 168 *and note* 4 ; *Ib.* 172 *and* 3 ; 275 *to* 278 *and note.*

The doctrine of vested right in office, as against the State, is not recognized in this country. See 9 *Ark.*, 287 ; 1 *Selden*, 285 ; 24 *Ark.*, 1 ; 10 *How.*, (*U. S.*) 402.

*Benjamin & Barnes, Gantt and T. D. W. Yonley*, for Respondent.

We submit, to oust a county clerk of his right to be recorder by operation of the provisions of the act relied on by the plaintiff, the following questions of fact must be made to appear to the satisfaction of the court:

*First*, That the county contains 15,000 inhabitants or upwards.

*Second*, That the Governor has appointed and commissioned a circuit clerk for such county.

*Third*, That the appointee has qualified by giving bond and taking the oath required by law.

*Fourth*, That the appointee has the qualification necessary to render eligible to the office of circuit clerk.

*Fifth*, That the appointee has made application to the county clerk for the books and papers belonging to the recorder's office.

McClure, C. J.—At the instance of the Attorney General, a writ of *quo warranto* was issued against George W. McDiarmid, commanding him to show by what authority he assumed to exercise the rights, powers and duties of recorder of Pulaski county.

The defendant, McDiarmid, filed a response to the writ, setting up that he is of lawful age; that he is a qualified elector, and that on the 14th of March, 1868, he was duly elected clerk of Pulaski county, Arkansas; that he was commissioned as such clerk by the then Governor of Arkansas; that he took the oath of office before an officer authorized by law to administer the same; that he executed a bond as required by law, and that the same was duly approved as required by law; that the duties of the office of recorder are part and parcel of the duties of the county clerk, and that his term of office has not yet expired.

To this response, the Attorney General filed a replication, and a demurrer. The replication admits, substantially, all of the allegations of the response, and sets up that the defendant, McDiarmid, held the office of recorder of said county, merely, *ex-officio*, and that the General Assembly, by an Act approved March 16th, 1871, entitled, "an Act to provide for Clerks of the Circuit Courts in certain counties, and to define their duties," transferred the duties of the office of recorder, in counties having a population of fifteen thousand and upwards, from the clerk of the county of Pulaski, and conferred the same on the clerk of the circuit court of Pulaski county; which office was created by the Act last named. That the county of Pulaski has over fifteen thousand inhabitants, and that one James V. Fitch, was by the Governor, on the 17th day of March, 1871, duly appointed clerk of the Circuit Court of said county, and that said Fitch

had duly qualified and entered upon the discharge of the duties of said office. That on the 20th of March, 1871, said Fitch made demand of said McDiarmid for the records, books, papers, documents and property of every description in his possession, belonging to the said office of recorder, and that said McDiarmid still refuses to comply with said demand; that the defendant yet usurps and continues to usurp the office of recorder of said county of Pulaski, and that by reason of the Act refered to, the term of office of said defendant, as recorder, has expired, etc.

The demurrer of the plaintiff was as follows : "Because the said defendant attempts to justify, and does not show a continuous state of facts, such as entitles him to the possession of said franchise of recorder, etc., at the time of the issuance of the writ."

The defendant filed a demurrer to the replication, setting up "that the Act of the General Assembly of the State of Arkansas is repugnant to the Constitution of said State, and is, on that account utterly null and void." The defendant also filed a rejoinder to the replication, setting up "that said James V. Fitch did not, at any time before the commencement of this suit, make application to said defendant to turn over to him the books, papers, documents, and property in his possession, as clerk of said county," etc.

To this rejoinder the plaintiff demurred, for the following causes :

First, Because the matters and things therein set forth are not sufficient to preclude the State of Arkansas from having and obtaining judgment.

Second, The law does not require the State to show a demand for the office.

We will take up the questions raised in this case in their order. In a proceeding by quo warranto, the State is not bound to show a demand for the office, nor to establish any fact, save such as are tendered by the replication, and put in

issue by a rejoinder or other plea.    This disposes of the sec--
ond demurrer.

Now to the next, which is, that "the rejóinder does not set
forth matter and things sufficient to preclude the State."    The
rejoinder simply sets up that Fitch "did not, at any time·
before the commencement of this suit, demand the books,
papers, etc., in the defendant's possession, pertaining to *said·
office of clerk* of said Pulaski county."    There is no allega-
tion in the replication that Fitch demanded the books, papers,
etc., of the defendant, pertaining to the office of the *clerk* of
said county.    The allegation is, that "Fitch demanded the
books, papers, etc., of the defendant, belonging to the office·
(not of *clerk*) but of *recorder* of said county.    The rejoinder,
as will be seen, is not responsive to any issue, tendered by the
replication; but if it was, the issue raised, or attempted to be
raised, could avail the defendant nothing, because the issue
here is not between Fitch and McDiarmid, but between the
State and McDiarmid.    The State is requiring him to show·
by what authority he exercises the rights and duties of the
office of Recorder of Pulaski county; this, and this alone, is
the issue tendered by the State, and it is the issue that must
be responded to, for we have already said that the State is not
bound to show anything save such facts as are tendered by
the replication, and put in issue by the rejoinder and other·
plea.

We have now seen that no fact alleged in the replication is.
put in issue, and it stands confessed, so far as the facts are
concerned.    This brings us down to the defendant's demurrer,
which asserts that the Act of the General Assembly, creating·
the office of circuit clerk, in counties having over fifteen
thousand inhabitants, and giving to such clerk the duties of
the office of recorder, is unconstitutional and void.

*Section* 19, *of Article VII,* of the Constitution of this State,
declares that "a county clerk shall be elected by the qualified
electors in each organized county, in this State, for the term
of four years, and shall perform such duties and receive such

fees as are now or may hereafter be prescribed by law."
The Constitution, as will be observed, does not attempt to
define any of the duties to be performed by the clerk, nor
does it enjoin any duties upon him. It simply declares that
he shall "perform such duties as may be prescribed by law."
Under the Constitution of 1836, the qualified electors elected
a circuit clerk for each county. This provision of the Con-
stitution left the county and probate courts without a clerk,
and the legislature provided that the circuit clerk should be,
*ex-officio*, clerk of both the county and probate courts. By an
Act of February, 1838, the legislature created the office of
recorder, and the language of the second section is, that "the
clerk of the circuit court, *until otherwise provided by law*, shall
be, *ex-officio*, recorder in each county, etc." From the time of
the adoption of the Constitution of 1836, until it was replaced
by another, no person seems to have doubted the power of
the General Assembly to *add* to the duties of the office of
circuit clerk; at least we find nothing in the Reports upon
that subject.

We have seen that the Constitution, of 1868, prescribed no
duties whatever upon the clerk therein provided for; he was
to perform such duties as were then, or might thereafter be
prescribed by law. There was nothing in the Constitution
indicating whether he was to be clerk of the county court,
the probate court, or the circuit court, nor was the clerk, thus
elected, entitled to exercise any duties whatever. The legis-
lature, at its first session, perceiving this fact, by an Act, duly
passed for that purpose, on the 9th of July, 1868, declared
that the clerks, elected under the Constitution, should, by
virtue of their office, be clerks of the county, the probate and
the circuit courts, and the recorder of the county.

We have now traced the right of the clerk to these different
offices, and we find that they are confered by *legislative enact-
ment* We have also seen that the laws, in existence at the
time of his election, did not authorize him to exercise the
duties of the office of recorder, because the law declared that

the clerk of the *Circuit Court* should be, *ex-officio*, recorder; and we have, also shown that the defendant was not even *ex-officio* clerk of the Circuit Court.

The office of clerk, as fixed by the Constitution, is an office which the legislature cannot absolutely abolish; but the duties to be performed, and the fees to be paid, is a thing wholly within the control of the legislature. We have seen that, under the Constitution of 1836, the legislature added to the duties of the office of circuit clerk, the additional duties of that of clerk of the County Court and Probate Court, and those of recorder of the county. There is no provision of the Constitution, that we are aware of, that inhibits the legislature from adding to, or taking from, the duties of an office. In the absence of any such provision, the legislature is the sole judge of the power and authority which shall vest in officers of this class. There is no such thing as a vested right in an officer to discharge a certain specific duty, unless it be the executive of the State. The Constitution enjoins it upon the executive to see that the laws are faithfully executed, and it is not competent for the legislature to provide another officer to perform that duty; but this is not true of any other executive or ministerial officer. The sheriffs of the different counties are collectors of the revenue; this privilege of collection may be taken away from that officer and conferred on the county treasurer or surveyor. The clerk makes out the tax books, but this privilege may be taken from him and given to the county assessor or the coroner, if the legislature so enacts. If these things may be done, why is it that the duty the legislature enjoined on the clerk of the county, of recording deeds, may not be transferred to some other officer? The truth of the matter is, that the legislature has the same right to regulate the duties to be performed by the clerk of the county, that it has to regulate his fees. We have no doubt about the constitutionality of the law, however much we may differ as to the policy of separating the offices. There is nothing in the response which shows any right in the de-

fendant to exercise the duties of the office of recorder; it is therefore ordered that a judgment of ouster be entered against the defendant.